UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. DORBECK, individually
and derivatively on behalf of GALLEON
INTERNATIONAL CORPORATION, and
GALLEON INTERNATIONAL
CORPORATION, nominal plaintiff,

    Plaintiffs,

v.

FRANK SYKORA, DAVID PARSONS,
and GALLEON INTERNATIONAL
CORPORATION, nominal and
substantive defendant,

    Defendants.
_____/

CASE NO. 09-cv-14646
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on November 29, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Attorney Fees and Costs (Docket #31), filed on August 16, 2010. On October 15, 2010, the Court entered an Opinion and Order permitting counsel for Mark Dorbeck ("Dorbeck")[1] to withdraw. In the October 15, 2010, Opinion and Order, the Court "extend[ed] the time for [Dorbeck] to file a response to Defendants' motion for attorney fees and costs until November 15, 2010." Despite that deadline passing over one week

---

[1] Dorbeck was the only plaintiff with a real party-in-interest in this case. Galleon International Corporation was simply a nominal plaintiff.

ago, Dorbeck has not filed a response of any nature. Nonetheless, the Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the Defendants' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion is GRANTED.

## II. BACKGROUND

The facts of this case and the Court's conclusions have been set forth in detail in Opinion and Orders issued on August 16, 2010, and October 15, 2010. A recitation of such facts and conclusions herein would be redundant; therefore, they are now incorporated herein by reference. In essence, this case involved Dorbeck (and his wife) claiming certain rights in a company (Galleon International Corporation), even though Dorbeck had not identified such alleged rights in a previously filed bankruptcy case. As a result, on August 16, 2010, the Court granted Defendants' motion for summary judgment based on judicial estoppel, concluding as follows:

> The Court finds that the positions taken by the Dorbecks (namely Mark Dorbeck), under penalty of perjury, in the Dorbecks' Chapter 13 bankruptcy petition are in direct conflict with positions taken by Plaintiffs (again, namely Mark Dorbeck) in the Complaint in this case. Allowing Plaintiffs to pursue their cause of action in light of the misrepresentations of Mark Dorbeck would only serve to condone "playing fast and loose with the courts," *Teledyne*, 911 F.2d at 1217-18 (citation omitted), and reward Mark Dorbeck (and his wife) for making false representations when filing their bankruptcy petition. Although the Court's ruling may result in a windfall for Defendants, the Dorbecks' abuse of the bankruptcy proceedings was unacceptable and will not be tolerated - or rewarded. Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiffs' cause of action pursuant to the doctrine of judicial estoppel.

Following the Court's dismissal of Plaintiffs' cause of action, Dorbeck's counsel engaged in privileged communications with him regarding the case. As a result of those privileged communications, Dorbeck's counsel determined that they could no longer represent Dorbeck and filed a motion to withdraw. Defendants did not oppose the motion to withdraw (which the Court granted on October 15, 2010), but they filed a response to clarify that they were seeking attorney fees and costs solely against Dorbeck (and not Dorbeck's former counsel).

## III. ANALYSIS

Defendants argue that Dorbeck's deliberate attempt to perpetrate a fraud on this Court caused Defendants to incur significant attorney fees ($99,901.75) and costs ($3,221.61) totaling $103,123.36 to defend this action. Defendants have submitted detailed invoices which reflect: (1) the hours worked by Robert Tuttle (at $400/hour), John Nemazi (at $380/hour) and Phyllis Golden Morey (at $335/hour), all of whom are shareholders in Brooks Kushman, the patent law firm that has represented Defendants, (2) the hours worked by a patent agent at Brooks Kushman (at $150-160/hour), (3) the nominal hours worked by another Brooks Kushman shareholder (at $275/hour), a paralegal (at $110/hour) and an associate attorney at Brooks Kushman (at $190/hour), and (4) the costs incurred in defending against Dorbeck's claims. Ultimately, after reviewing the Court's past practice regarding attorney fees, Defendants voluntarily reduced the amount requested for fees and costs by 30% and ask that the Court award Defendants fees and costs of $73,152.84.

**A. An Award of Attorney Fees and Costs is Appropriate**

As Defendants acknowledge, the "American Rule" generally precludes a prevailing party from recovering attorney fees unless such award is authorized by statute. *Alyeska Pipeline Serv. Co.*

*v. Wilderness Society*, 421 U.S. 240, 247 (1975). In this case, however, Defendants move the Court to exercise its inherent authority to award Defendants fees and costs they have incurred because of Dorbeck's wrongful conduct. *See First Bank of Marietta v. Hartford Underwriters Insurance Co.*, 307 F.3d 501, 512 (6th Cir. 2002) ("The district court has the 'inherent authority to award fees when a party litigated in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (*quoting Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (internal quotation marks omitted). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (a court may also "assess attorney's fees against the responsible party" if the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled.") (citations and quotation marks omitted).

In the Sixth Circuit, a court may invoke the bad faith exception if it finds: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] filing the suit was for an improper purpose such as harassment." *First Bank of Marietta*, 307 F.3d at 512. Significantly, although the second prong refers to "counsel's" knowledge of the merits of the claims asserted, a court may exercise its inherent power to sanction parties as well as counsel. *See In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987). Moreover, parties and/or attorneys may be sanctioned even if the lack of merit was not initially apparent but later became apparent and they, nevertheless, continued to press baseless claims:

> For a court to impose sanctions under its inherent powers, it is not necessary that the court find that an action was meritless as of filing, or even shortly thereafter. It can become apparent part-way through a suit that an action that initially appeared to have merit is in fact meritless; parties and attorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit.

*BDT Products, Inc. v. Lexmark Internat'l, Inc.*, 602 F.3d 742, 753 n. 6 (6th Cir. 2010) (emphasis in original).

4

Defendants argue that the bad faith exception has been met in this case, as follows:

> Each prong of the inherent authority analysis is met in this case. First, this Court effectively held that Dorbeck's claims were devoid of legal and factual merit as they were asserted in clear violation of the well-settled doctrine of judicial estoppel, which "forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir.1988) (citations omitted). *See also First Bank of Marietta*, 307 F.3d at 521 (finding that the first prong was satisfied where well-settled law precluded the relief plaintiff requested).
>
> Second, Dorbeck was well aware at the start of these proceedings of the factual inconsistencies in his pleadings in this Court and his petition in the Bankruptcy Court. At least by mid-December 2009, Dorbeck's counsel was also aware of his duplicity and the legal the same, when Dorbeck's misrepresentations and the doctrine of judicial estoppel were outlined in Defendants' Counterclaims and Motion for Summary Judgment. *See* Dkt. Nos. 7, 8.
>
> Lastly, a finding of "bad faith" or "conduct tantamount to bad faith" in the filing and/or prosecution of a suit is sufficient to satisfy the "improper purpose" prong. *See BDT Prods., Inc. v. GMBH*, 602 F.3d 742, 752 (6th Cir. 2010)("[S]atisfying the overarching bad faith requirement mandated by the Supreme Court before imposition of sanctions under a court's inherent powers often automatically satisfies the improper purpose prong. . . ."); *U.S. ex rel Scott*, 2005 WL 3434830 at *6 (finding an improper purpose both because the suit lacked merit and because of plaintiff's conduct during the course of litigation). Filing a clearly meritless lawsuit is also regarded as an improper use of the courts and evidence of bad faith. *First Bank of Marietta*, 307 F.3d at 525.
>
> Here, evidence of Dorbeck's bad faith in the filing and prosecution of this action is abundant. Dorbeck's utter disregard for the sanctity of the judicial process began in the Bankruptcy Court when he knowingly and willfully failed to disclose assets and property interests. Not satisfied with having successfully duped the Bankruptcy Court, Dorbeck filed suit in this Court asserting claims predicated on rights which allegedly flow from the very property interests he had disclaimed (explicitly or by omission) in his

5

bankruptcy petition. Further, when confronted with his inconsistencies and settled law which precludes a suit under such circumstances, Dorbeck refused to withdraw his meritless claims, requiring Defendants to continue for an additional eight months to incur fees and costs in preparing its defense and conducting discovery. Dorbeck also attempted to justify his behavior by making more false assertions – namely, the incredible and ultimately refutable claims that his failure to disclose his claimed property interests to the Bankruptcy Court was "inadvertent and unintentional" and due to his belief that his Galleon shares had no value.

Behavior such as Dorbeck's, which abuses the judicial process and flagrantly compromises the integrity of the Court and its proceedings, is precisely the type of conduct for which courts reserve the exercise of their inherent authority. *See Chambers*, 501 U.S. at 45-46; *First Bank of Marietta*, 307 F.3d at 511-512. Therefore, Defendants request that the Court exercise its authority to award them the fees and costs (outlined more fully below) which they were wrongfully forced to incur to defend this action.

The Court agrees with Defendants' argument. Dorbeck has engaged in bad faith sufficient to justify an award of attorney fees and costs against him and in favor of Defendants. As stated by Defendants in the foregoing paragraphs and by the Court in Section II of this Opinion and Order (and set forth in greater detail in the Court's August 16, 2010, Opinion and Order), Dorbeck made several false representations when: (1) filing his bankruptcy petition, and (2) filing this case.

**B.    Requested Fees and Costs are Reasonable**

The Court has reviewed Defendants' Motion for Attorney Fees and Costs, the Brief in Support of Defendants' Motion, and the detailed invoices attached thereto. The Court finds that the hours and expenses billed by Brooks Kushman were reasonably, actually and necessarily incurred in defending this lawsuit on behalf of Defendants. The Court also notes that Dorbeck has not objected to the: (1) amount of hours billed by the Brooks Kushman professionals, (2) costs claimed by Defendants, or (3) reasonableness of the billing rates associated with the Brooks Kushman

6

professionals set forth in the invoices submitted by Defendants.

Finally, the Court finds that the years of experience, the legal practice areas and the office location (Southfield, Michigan) of the Brooks Kushman professionals who worked on this matter support the hourly rates charged by Brooks Kushman for such individuals. Mr. Tuttle, Mr. Nemazi and Ms. Golden Morey each have more than 25 years legal experience, and both Mr. Nemazi and Mr. Tuttle have worked as intellectual property litigators for their entire careers. Likewise, throughout her career at Brooks Kushman and Fortune 200 companies, Ms. Golden Morey has specialized in intellectual property and commercial litigation. Mr. Turner has specialized in patent prosecution and patent litigation for the past three years at Brooks Kushman. When the rates billed for such individuals are considered in light of the market rate for persons of comparable experience in their practice area, the Court finds that such rates (particularly when discounted by 30%, as Defendants have done in this case) are reasonable. Accordingly, the Court awards Defendants fees and costs in the amount of $73,152.84, all of which is to be paid by Dorbeck.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby GRANTS Defendants' Motion for Attorney Fees and Costs (Docket #31)

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: November 29, 2010

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 29, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290